Larry W. WERLINGER, Plaintiff and Appellee,

v.

MUTUAL SERVICE CASUALTY INSURANCE COMPANY, Mutual Service Life Insurance Company, and Modern Service Insurance Company, Defendants and Appellants.

Civ. No. 920128.

Supreme Court of North Dakota.

Feb. 23, 1993.

Wegner, Fraase, Nordeng, Johnson & Ramstad, Fargo, for plaintiff and appellee; argued by Jeffrey A. Bredahl.

Jeffries, Olson & Flom, Moorhead, MN, for defendants and appellants; argued by Sara B. Gullickson, Moorhead, MN.

LEVINE, Justice.

Mutual Service Casualty Insurance Company, Mutual Service Life Insurance Company, and Modern Service Insurance Company (MSI) appeal from a judgment awarding Larry W. Werlinger termination compensation due him under the parties' agent's contract. We conclude that a noncompetition clause in the contract is an unlawful restraint of trade, void under § 9–08–06, N.D.C.C.,[1] and we affirm the judgment.

Werlinger was an MSI insurance agent in Fargo from 1977 until he resigned in 1991. Paragraph 12(A) of the parties' contract provided that an agent, with at least 500 policies and at least 5 years of service would, upon termination, be paid termination compensation of "a percentage of the service fees paid to you by each company for the last full 12 calendar months immediately preceding such termination." Paragraph 12(A) also contained a schedule of the percentages of service fees payable upon termination, which varied in accordance with the number of years of service the agent had with MSI. Paragraph 12(D)

of the contract provided for cessation of termination compensation:

"All liability of the companies for termination compensation provided for in paragraph 12 and its subparagraphs shall cease in the event any one or more of the following shall occur:

"(1) You either directly or indirectly, by and for yourself or as an agent for another, or through others as their agent, engage in or be licensed as an agent, solicitor, representative, or broker or in any way be connected with the property, casualty, health, or life insurance business, within one year following termination within a 25 mile radius of your business location at that time; . . ."

Immediately after resigning as an MSI agent, Werlinger began serving as an agent for another insurance company within 25 miles of his former business address. Because of Werlinger's immediate employment as an insurance agent within 25 miles of his former business, MSI refused to pay termination compensation[2] to Werlinger.

Werlinger sued MSI to recover the termination compensation allegedly due him. Both parties filed motions for summary judgment. The trial court ruled that Paragraph 12(D) was a restraint of trade, void and unenforceable under § 9–08–06, N.D.C.C. The court granted Werlinger's motion for summary judgment and denied MSI's. Judgment was entered in favor of Werlinger for $26,048.45, plus interest, costs and disbursements. MSI appealed.

Relying wholly on this court's decision in *Geiss v. Northern Ins. Agency*, 153 N.W.2d 688 (N.D.1967), MSI contends that Paragraph 12(D) of its agent's contract with Werlinger is not a restraint of trade. In that case, Northern Insurance Agency

---

1. "**9–08–06. In restraint of business void— Exceptions.** Every contract by which anyone is restrained from exercising a lawful profession, trade, or business of any kind is to that extent void, except:

"1. One who sells the goodwill of a business may agree with the buyer to refrain from carrying on a similar business within a specified county, city, or a part of either, so long as the buyer or any person deriving title to the

goodwill from him carries on a like business therein.

"2. Partners, upon or in anticipation of a dissolution of the partnership, may agree that all or any number of them will not carry on a similar business within the same city where the partnership business has been transacted, or within a specified part thereof."

2. The parties stipulated that the amount in dispute was $26,048.45.

stopped paying Geiss commissions on renewal premiums when Geiss terminated his employment with Northern and began selling insurance for another company. Northern relied on a clause in the employment contract, providing that renewal commissions would be paid to Geiss after termination of employment, "provided he did not go to work for another insurance company for a period equal to one month for each month after the first six months that [Geiss's] contract with [Northern] had been in force." *Id.* at 689. Geiss sued to recover renewal commissions, contending that the contract clause, providing for forfeiture of renewal commissions if he took employment with another insurance company, was an unlawful restraint of trade, in violation of § 9–08–06, N.D.C.C. In affirming a judgment for Northern, this court held that the noncompetition clause in the parties' employment contract was not a restraint of trade:

"The contract in question does not violate the provisions of Section 9–08–06, North Dakota Century Code, for it does not in any way restrain the plaintiff from following his profession, trade, or business. It does provide that, should he decide to give up his work with the defendant and take employment with another insurance company during a certain period following the termination of his employment with the defendant, he would not be entitled to any commissions on renewals paid after he takes such employment with another company, on policies which he had sold for the defendant. This is a perfectly lawful condition. The plaintiff had the right to contract as to the conditions and circumstances under which he was to receive commissions on renewal premiums, and such agreement was not in restraint of his profession, trade, or business. (Citations omitted.)

"The plaintiff has no vested right in the renewal payments which were to be made in the future on policies which he had sold. His right to such commissions became due only in the event the renewal premiums were paid, during the time before his employment by another insur-ance company. There is nothing in the contract between the plaintiff and the defendant which prevents or restrains the plaintiff from taking employment with any other insurance company. The provision for payment of commissions on renewals being terminated upon the plaintiff's acceptance of employment with another insurance company does not in any way prevent the plaintiff from engaging in his profession, trade, or business of selling insurance for any other company. The provision in question therefore is not in restraint of his profession, trade, or business and is not in violation of Section 9–08–06, North Dakota Century Code."

*Geiss v. Northern Ins. Agency, supra,* 153 N.W.2d at 690–691.

We must overrule either *Geiss* or the trial court's decision in this case. In *Geiss*, "the plaintiff's right to commissions on renewal premiums [was] an unaccrued and a contingent right, which [did] not become an absolute right until ... renewal premiums [were] paid by the insured." *Geiss, supra,* 153 N.W.2d at 690. Werlinger's termination compensation, on the other hand, was to be a percentage of the service fees he had already been paid. Werlinger has suggested that we distinguish *Geiss* from this case on the basis that, "[b]ecause of the unaccrued and contingent nature of the renewal commissions [in *Geiss*], there existed no vested right in such commissions until the premiums were actually paid by the insured", while Werlinger's "termination compensation differs from renewal commissions in that the compensation ... represents a known amount, not an expectancy, and Werlinger had an absolute right to such compensation upon termination of employment."

We deem Werlinger's proffered distinction to be one without a difference. The important feature of the contracts involved in this case and in *Geiss* was not the basis upon which either company's terminated agent was to be paid, but the restraint on competition that the companies imposed upon their agents to avoid the forfeiture of money they would otherwise be paid. In

our view, *Geiss* failed to recognize that a restraint of trade need not be absolute to be unlawful. Rather than distinguish *Geiss* as Werlinger has suggested, we prefer to recognize that *Geiss* was wrongly decided and overrule it.

"The policy of the common law has always been in favor of free competition." W. Page Keeton et al., *Prosser and Keeton on the Law of Torts* § 130, at 1012 (5th ed. 1984). In the Middle Ages and until the 1600s, all contracts in restraint of trade were regarded as wholly illegal. VIII W. Holdsworth, *A History of English Law* 56–59 (2nd ed. 1937, 2nd Impression 1973). *Colgate v. Bacheler*, 78 Eng.Rep. 1097 (1602), was typical of the time. It involved a debt and a bond by which the defendant covenanted that if his son should "use the trade of an haberdasher within the county of Kent, the cities of Canterbury or Rochester", he would pay the plaintiff twenty pounds. The court held the contract to be unlawful:

> "[T]his condition is against law, to prohibit or restrain any to use a lawful trade at any time, or at any place; for as well he may restrain him for one time or one place, he may restrain him for longer times and more places, which is against the benefit of the commonwealth; for being freemen, it is free for them to exercise their trade in any place."

*Id.* An argument that the restraint was not absolute, because it could be eliminated by payment of twenty pounds, was unavailing, because the tradesman "ought not to be abridged of his trade and living." *Id.* Reasonable exceptions, limited in time and space, began to arise and be recognized in the 1600s, such as in the case of the sale of a business, or limited restraints that a master might impose upon an apprentice to guard against a former apprentice being able to use all his former master's trade secrets to compete against him. VIII Holdsworth, *supra*, at 58–59.

"[T]he interests of the contracting parties are not necessarily the same as the interests of the commonwealth." *Maxim Nordenfelt Guns and Ammunition Co. v. Nordenfelt*, [1893] I Ch. 630, 661 (Bowen, L.J.). Courts may declare contract provisions void as against public policy if they are "inconsistent with fair and honorable dealing, contrary to sound policy and offensive to good morals." *Johnson v. Peterbilt of Fargo, Inc.*, 438 N.W.2d 162, 164 (N.D. 1989). "[O]ne of the oldest and one of the most continuous" applications of public policy "in the sphere of contract law is its application to contracts in restraint of trade." VIII Holdsworth, *supra*, at 56. "[T]he law as to contracts in restraint of trade has, more than any other class of contracts, been moulded by changing ideas of public policy." *Id.*

This state's public policy on restraining trade is fixed by § 9–08–06, N.D.C.C., which provides, with two narrow exceptions not relevant here, that "[e]very contract by which anyone is restrained from exercising a lawful profession, trade, or business of any kind is to that extent void." *See* fn. 1, *supra*. In *Olson v. Swendiman*, 62 N.D. 649, 244 N.W. 870 (1932), a dentist employed another dentist for a five-year term under a contract providing that if the employed dentist left before the term expired, he could not practice dentistry in Grand Forks, North Dakota, or East Grand Forks, Minnesota, for a period of two years. The contract provided for liquidated damages of $2,000 upon violation. This court held that a provision for purchasing the right to compete did not save the restraint of trade:

> "Appellant claims that, under the contract, plaintiff was at liberty to practice his profession in the City of Grand Forks after the termination of his contract upon payment of $2,000 to the defendant. Surely this was not freedom to practice his profession in Grand Forks, since he would have to purchase the freedom with $2,000, and there is no merit to this contention."

244 N.W. at 870. *Accord, Colgate v. Bacheler, supra.*

*Spectrum Emergency Care, Inc. v. St. Joseph's Hospital & Health Center*, 479 N.W.2d 848 (N.D.1992), involved contracts between Spectrum, a company supplying emergency room physicians to hospitals,

and the physicians it employed to supply to the hospital. Spectrum's contract with the physicians provided:

> "... Therefore, Physician agrees that during the term of this contractual relationship with Corporation and for a period of one (1) year thereafter, Physician will not ... (c) compete with Corporation at Hospital or enter into any contractual arrangements for the provision of emergency department physician coverage with any hospital where Physician has been scheduled by Corporation."

479 N.W.2d at 850. We said of that provision: "There can be no doubt that section 9–08–06, N.D.C.C., makes void the provision which attempts to prohibit the physicians from being employed by the Hospital at the end of the contract period." 479 N.W.2d at 851.

What is now codified as the opening clause of § 9–08–06, N.D.C.C., was drawn from the Field Code, originally proposed for adoption in New York, and was enacted as § 833 of the Dakota Territory Civil Code of 1865 and later codified as § 959 of the Dakota Territory Civil Code of 1877. The same Field Code provision was enacted by California in 1872 and codified as Cal.Civ. Code § 1673 (now codified as Cal.Bus. & Prof.Code § 16600). "Because of this common derivation, California court decisions construing Field Code sections, while not binding, are entitled to respectful consideration, and may be 'persuasive and should not be ignored.'" *Glatt v. Bank of Kirkwood Plaza*, 383 N.W.2d 473, 477 n. 4 (N.D.1986) (citation omitted). California courts, construing the same Field Code provision from which our statute was derived, held that it "invalidates provisions in employment contracts prohibiting an employee from working for a competitor after completion of his employment or imposing a penalty if he does so." *Buskuhl v. Family Life Ins. Co.*, 271 Cal.App.2d 514, 76 Cal.Rptr. 602, 607 (1969).

In light of the common-law history of noncompetition clauses in restraint of trade, Section 9–08–06, N.D.C.C., *Olson v. Swendiman, supra; Spectrum Emergency Care, Inc. v. St. Joseph's Hospital & Health Center, supra;* and California decisions, such as *Buskuhl v. Family Life Ins. Co., supra,* construing the same Field Code provision as § 9–08–06, N.D.C.C., we conclude that Paragraph 12(D) of the parties' contract constitutes an unlawful restraint of trade and is void under § 9–08–06, N.D.C.C. The contract restrains Werlinger from competing with MSI by requiring that he "purchase the freedom" (*Olson v. Swendiman, supra,* 244 N.W. at 870) to compete with MSI by forfeiting money that MSI would otherwise pay to him. The contract restrains Werlinger from competing with MSI by "imposing a penalty if he does so" (*Buskuhl v. Family Life Ins. Co., supra,* 76 Cal.Rptr. at 607) in the form of a forfeiture of money otherwise due him if he should elect to compete with MSI. *Geiss v. Northern Ins. Agency, supra,* is inconsistent with this court's earlier decision in *Olson v. Swendiman, supra,* this court's later decision in *Spectrum, supra,*[3] and the California decisions construing the same Field Code provision as our statute. Consequently, we hereby overrule it.

The judgment is affirmed.

MESCHKE, J., and RALPH J. ERICKSTAD, Surrogate Judge, concur.

Surrogate Judge RALPH J. ERICKSTAD was Chief Justice at the time this case was heard and served as surrogate judge for this case pursuant to Section 27–17–03, N.D.C.C.

Justice J. PHILIP JOHNSON, who was a member of the Court when this case was heard, did not participate in this decision.

Justice NUEMANN and Justice SANDSTROM, not being members of the Court when this case was heard, did not participate in this decision.

---

**3.** We note that this court in *Geiss* did not discuss the earlier case of *Olson v. Swendiman*, 62 N.D. 649, 244 N.W. 870 (1932). We also note that we did not discuss either *Geiss* or *Olson v. Swendi-* man in *Spectrum Emergency Care, Inc. v. St. Joseph's Hospital & Health Center*, 479 N.W.2d 848 (N.D.1992).

VANDE WALLE, Chief Justice, concurring specially.

This case does not involve an employee soliciting customers for his or her own business while working for another [*See Biever, Drees & Nordell v. Coutts*, 305 N.W.2d 33 (N.D.1981); *Spectrum Emergency Care v. St. Joseph's*, 479 N.W.2d 848, 853 (N.D.1992) [VandeWalle, J., concurring specially]]. Therefore, I agree with the majority opinion and most of the rationale contained therein.

I continue to believe that agreements prohibiting an employee from soliciting the employee's clients during the term of the employment are valid, notwithstanding section 9-08-06, NDCC. *See, e.g.,* §§ 34-02-07; 34-02-14, NDCC. I do not construe this opinion nor *Spectrum Emergency Care, supra*, to hold contrary to that belief.