Kenneth J. KOVARIK, Appellee,

v.

AMERICAN FAMILY INSURANCE GROUP; American Family Mutual Insurance Company; American Standard Insurance Company of Wisconsin; American Family Life Insurance Company; American Family Financial Service, Inc., Appellants.

No. 96–2059.

United States Court of Appeals, Eighth Circuit.

Submitted Dec. 13, 1996.

Decided March 19, 1997.

Thomas O. Smith, Bismarck, ND, argued, for appellant.

Jeff A. Bredahl, Fargo, ND, argued, for appellee.

Before BOWMAN and LAY, Circuit Judges, and STROM,[1] District Judge.

BOWMAN, Circuit Judge.

American Family Mutual Insurance Company, American Standard Insurance Company of Wisconsin, and American Family Life Insurance Company (collectively American Family) appeal from a grant of summary judgment in favor of American Family's former agent, Kenneth J. Kovarik. Because we conclude that the contractual provisions in dispute are not an unlawful restraint of trade under North Dakota law, we reverse.

I.

Kovarik was an American Family insurance agent in North Dakota for over seventeen years. During his tenure at American Family, Kovarik's employment relationship was governed by an "Agent Agreement" which outlined the duties and privileges of American Family agents. Under this agreement, the employment relationship could be terminated by Kovarik or American Family at any time, with or without cause, if written notice was provided. Upon termination, the former agent was eligible to receive extended earnings based on a percentage of renewal service fees earned during the twelve months preceding termination of the agreement, pro-

---

1. The Honorable Lyle E. Strom, United States District Judge for the District of Nebraska, sitting by designation.

vided that the agent had been associated with American Family for at least ten years and provided that the agent returned all American Family property, including policies and policy records, to a designated representative of the company within ten days of termination. In addition, the agreement required that, for a period of one year from the date of termination, the former agent refrain from soliciting, either directly or indirectly, any American Family policyholders that were credited to the agent's account at the time of termination.[2] The former agent's failure to comply with this limited nonsolicitation provision would result in the forfeiture of his right to extended earnings.[3]

By letter dated May 19, 1995, Kovarik terminated his employment relationship with American Family. At that time, Kovarik had 1,533 policies in force with American Family. By letter dated May 26, 1995, American Family accepted Kovarik's resignation and advised Kovarik that the agent agreement required that he return all American Family property and refrain from soliciting his former clients for a period of one year.

Shortly after terminating his relationship with American Family, Kovarik accepted employment with H & H Insurance Company (H & H) and began to solicit his former American Family clients to change insurance carriers, including those clients credited to Kovarik's account for purposes of calculating his extended earnings. On June 8, 1995, American Family notified Kovarik that the company was aware that Kovarik was soliciting his former American Family policyholders. The letter advised Kovarik that American Family considered Kovarik's activity a violation of the agent agreement and that, as a result of such violation, payment of Kovar-

ik's extended earnings would be suspended until an investigation was completed.

On June 22, 1995, Kovarik, seeking to compel payment of his extended earnings, brought an action against American Family in North Dakota state court alleging that the provisions in the agent agreement prohibiting solicitation of former clients and authorizing forfeiture of extended earnings in the event of such solicitation were unenforceable under North Dakota law. American Family removed the case to federal court based on diversity of citizenship and denied that the provisions in question amounted to a restraint of trade. American Family further asserted that, in soliciting American Family policyholders to whom he had previously sold insurance policies, Kovarik was exploiting the company's confidential information.

Kovarik admitted, in a Stipulation of Material Facts filed with the District Court, that he intended "to solicit most, if not all, of his former American Family policyholders to induce or attempt to induce those policyholders to replace their American Family policy or policies with" H & H policies. App. at 33. Both Kovarik and American Family moved for summary judgment. The District Court granted Kovarik's motion, holding that the contractual provisions in question are unenforceable as an unlawful restraint of trade. Entry of final judgment was withheld pending determination of the amount of extended earnings Kovarik was entitled to recover. The District Court did not reach Kovarik's claim that the forfeiture clause also was unenforceable as a penalty.

Subsequently, the parties stipulated that Kovarik was eligible to receive $66,050.77 in extended earnings when he terminated his relationship with American Family and that no payments of such earnings had been made

**2.** Section 6.k., titled "Your Activity After Termination," provides:

> For a period of one year following termination of this agreement, you will not either personally or through any other person, agency, company or organization directly or indirectly induce, attempt to induce or assist anyone else in inducing or attempting to induce any policyholder of the Companies credited to your account at the time of termination to lapse, cancel, replace or surrender any insurance policy in force with the Companies.

App. at 40.

**3.** Section 6.u., titled "Forfeiture of Extended Earnings All Companies," provides:

> If you do not comply with all the provisions of this agreement, particularly Sec. 6.k. entitled "Your Activity After Termination", you shall immediately forfeit all rights to extended earnings otherwise payable by any Company thereafter.

App. at 42.

to him.[4] The District Court entered final judgment in accordance with this stipulation. American Family appeals the District Court's determination that the nonsolicitation clause and the forfeiture clause together constitute an unlawful restraint of trade.

## II.

■ North Dakota law determines the rights of the parties in this diversity action, and we review de novo both the District Court's interpretation of North Dakota law, see Salve Regina College v. Russell, 499 U.S. 225, 231, 111 S.Ct. 1217, 1221, 113 L.Ed.2d 190 (1991), as well as its grant of summary judgment, see Habiger v. City of Fargo, 80 F.3d 289, 295 (8th Cir.), cert. denied, —— U.S. ——, 117 S.Ct. 518, 136 L.Ed.2d 407 (1996). In resolving the substantive issues of state law presented in this appeal, we are bound in our interpretations of North Dakota law by the decisions of the North Dakota Supreme Court. If the North Dakota Supreme Court has not spoken on these issues, we must attempt to predict what that court would decide if it were faced with them. "In making our prediction, we may consider relevant state precedent, analogous decisions, considered dicta, ... and any other reliable data." Ventura v. Titan Sports, Inc., 65 F.3d 725, 729 (8th Cir.1995), cert. denied, —— U.S. ——, 116 S.Ct. 1268, 134 L.Ed.2d 215 (1996).

■ Kovarik claims that the nonsolicitation clause is unenforceable as a restraint of trade and that American Family violated North Dakota law by basing its refusal to pay him his extended earnings upon that clause. This is the claim that the District Court sustained. Kovarik makes no separate claim that the forfeiture clause itself is unenforceable as a restraint of trade. Accordingly, we, like the briefs and arguments of the parties, focus on the nonsolicitation clause as an unlawful restraint of trade vel non. If it survives restraint-of-trade scrutiny, then it operates as a valid trigger of the forfeiture clause, and is not transformed into an unlawful restraint of trade when combined with the latter clause.

American Family argues that the District Court erred in concluding that the nonsolicitation clause[5] contained in the American Family agent agreement is void and unenforceable under North Dakota Century Code section 9–08–06. This section, with two exceptions not relevant here, provides that "[e]very contract by which anyone is restrained from exercising a lawful profession, trade, or business of any kind is to that extent void." N.D.Cent.Code § 9–08–06 (1987). The North Dakota Supreme Court has indicated that this section is intended to promote commercial activity by restricting an individual's ability to enter into agreements which hinder commercial exchange or which operate to impede competition. See Herman v. Newman Signs, Inc., 417 N.W.2d 179, 181 (N.D.1987).

The North Dakota Supreme Court has applied section 9–08–06 to invalidate clauses in employment agreements that absolutely bar an employee from competing in any way with his former employer after termination of the employment relationship or that prohibit a former employee from accepting a position with his former employer's competitors. See Werlinger v. Mutual Serv. Cas. Ins. Co., 496 N.W.2d 26, 27 (N.D.1993) (holding contract preventing insurance agent from accepting job with former employer's competitors for one year void); Spectrum Emergency Care, Inc. v. St. Joseph's Hosp. and Health Ctr., 479 N.W.2d 848, 851 (N.D.1992) (holding contract prohibiting emergency room physicians from accepting positions in competition with former employer for one year void); Olson v.

---

4. Kovarik was also eligible to receive life extended earnings for eleven years based on a calculation as to policies in force and premiums payable on those policies. American Family has made all life extended payments to Kovarik, and these payments are not in dispute.

5. Kovarik would prefer to characterize the disputed clause as a noncompete clause. We think this is a question of semantics devoid of substantive importance. No matter what the clause is called, it is narrowly limited in its scope, purpose, and effect: it merely requires Kovarik to refrain from soliciting a limited number of American Family policyholders (those to whom he had sold the policies on which his extended earnings are based) for a period of one year, and its violation brings the forfeiture clause into play.

*Swendiman,* 62 N.D. 649, 244 N.W. 870 (1932) (holding contract preventing dentist from practicing dentistry in named cities for two years after termination of employment void). ·

*Werlinger* is similar to this case in that it concerns a dispute between an insurance agent and his former company over post-termination payments. Under the employment agreement in *Werlinger,* the agent was eligible to receive "termination compensation" based on a percentage of service fees already paid to him provided that he refrain from engaging in any way in the property, casualty, health, or life insurance business for one year after termination of the employment relationship. *Werlinger,* 496 N.W.2d at 27. The Court concluded that prohibiting a former employee from competing in any way or "imposing a penalty if he does so," constitutes a clear violation of section 9–08–06. *Id.* at 30.

The North Dakota Supreme Court, however, has not ruled on the application of section 9–08–06 to an employment agreement comparable to the one with which we are now presented. Unlike the situation in *Werlinger,* the American Family agent agreement does not penalize post-termination employment in an entire industry for an entire year, but instead only penalizes the former agent if, within one year after his employment ends, he solicits those of his former employer's customers to whom he personally sold his former employer's products and on whose renewed service fees his extended earnings are based. In the absence of applicable state precedent, we look, as we must, to analogous decisions, considered dicta, and any other reliable data. *See Ventura,* 65 F.3d at 729.

Because North Dakota Century Code section 9–08–06 is derived from the same source as California Business and Professional Code section 16600 [6] and uses nearly identical language,[7] the North Dakota Supreme Court has stated that "California court decisions construing [this section], while not binding, are entitled to respectful consideration, and may be persuasive and should not be ignored." *Werlinger,* 496 N.W.2d at 30 (internal quotations omitted). In noting the common genesis of these two sections, the North Dakota Supreme Court has recognized that their purpose is to " 'invalidate[ ] provisions in employment contracts prohibiting an employee from working for a competitor after completion of his employment or imposing a penalty if he does so.' " *Id.* (quoting *Buskuhl v. Family Life Ins. Co.,* 271 Cal.App.2d 514, 76 Cal.Rptr. 602, 607 (1969)).

· Like the courts in North Dakota, California courts have concluded that employment agreements under which, following termination of the employment relationship, the former employee is prohibited from accepting a position with the former employer's competitor or is prevented from competing directly with his former employer are void as an unlawful restraint of trade. *See, e.g., Buskuhl,* 76 Cal.Rptr. at 607; *Bosley Med. Group v. Abramson,* 161 Cal.App.3d 284, 207 Cal.Rptr. 477, 480 (1984).

Less burdensome restrictions, however, may survive. For example, in *Buskuhl* the insurance company was obligated to pay commissions to its former agent on policies written during his employment provided that the former agent avoid injuring the company in its relations with customers and refrain from attempting to induce customers to discontinue association with the company for a period of five years. In holding that these terms did not violate section 16600, the court noted that they did not prevent the former employee from carrying on a business; rather, they operated as "a limitation only upon dealing with customers of the former employ-

---

**6.** Section 16600 provides that "every contract by which anyone is restrained from engaging in a lawful profession, trade, or business of any kind is to that extent void." Cal.Bus. & Prof.Code § 16600 (Deering 1992).

**7.** Oklahoma statute title 15, section 217 (1993) also uses nearly identical language to North Dakota Century Code section 9–08–06. In *Tatum v.*

*Colonial Life & Accident Ins. Co.,* 465 P.2d 448, 451 (Okla.1970), the Oklahoma Supreme Court upheld a nonsolicitation clause in an insurance agent's employment contract which required the former agent "to maintain a 'hands-off' policy" for two years after termination with respect to former clients who he knew were insured by his former employer.

er for a limited time." *Buskuhl,* 76 Cal.Rptr. at 607.

In addition, California courts have fashioned a judicial exception to section 16600 applicable when a former employee, by virtue of his employment, has obtained confidential information concerning his former employer's customers that, if used to compete with his former employer, would result in unfair competition. *See Gordon v. Landau,* 49 Cal.2d 690, 321 P.2d 456, 459 (1958) (holding agreement not to use employer's confidential lists to solicit customers for one year valid and enforceable); *State Farm Mut. Auto. Ins. Co. v. Dempster,* 174 Cal.App.2d 418, 344 P.2d 821, 826 (1959) (holding agreement limited to prohibiting former agent from interfering with existing policyholders whom he serviced valid and enforceable); *Hollingsworth Solderless Terminal Co. v. Turley,* 622 F.2d 1324, 1330 (9th Cir.1980) (noting that "a person is not always free to solicit customers of a former employer or to use confidential information acquired during his former employment") (construing California law).

Effective January 1, 1985, California adopted the Uniform Trade Secrets Act (UTSA), which substantially subsumes the equitable principles previously applied by the California courts to prevent former employees from unfairly using confidential information acquired during their former employment. Cal.Civ.Code §§ .3426 to 3426.10 (West 1997). North Dakota likewise adopted the UTSA effective July 1, 1983. N.D.Cent. Code § 47–25.1–01 to –08 (1995). A trade secret is defined under the UTSA as information which:

> (1) Derives independent economic value, actual or potential, from not being generally known to the public or to other persons who can obtain economic value from its disclosure or use; and (2) Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

Cal.Civ.Code § 3426.1(d) (West 1997); *see* N.D.Cent.Code § 47–25.1–01.2.b.(4) (Supp. 1995). Confidential customer lists that meet this definition have been classified and protected as trade secrets by the California courts. *See Courtesy Temporary Serv., Inc. v. Camacho,* 222 Cal.App.3d 1278, 272 Cal.

Rptr. 352, 357 (1990); *American Credit Indem. Co. v. Sacks,* 213 Cal.App.3d 622, 262 Cal.Rptr. 92, 97 (1989). The parties have not cited, nor have we uncovered, any North Dakota decisions specifically addressing this issue. We are, therefore, guided by the general principles' used by the California courts to interpret section 16600 prior to the adoption of the UTSA as well as by decisions after enactment of the UTSA.

While the American Family agent agreement at issue here does not specifically categorize the information an agent acquires about customers as confidential, the fundamental question "is whether in a given case the knowledge gained by an employee is secret and confidential." *California Intelligence Bureau v. Cunningham,* 83 Cal.App.2d 197, 188 P.2d 303, 306 (1948). A finding of confidentiality may be appropriate under common law principles, as well as under the UTSA, even if the customers' names are known or easily ascertainable, if the specific attributes of such customers are important to the seller and are not obvious. *See Hollingsworth,* 622 F.2d at 1333; *American Credit Indem.,* 262 Cal.Rptr. at 97; *Courtesy Temp. Serv.,* 272 Cal.Rptr. at 357–58. This is the case with a former insurance agent who acquires the names, addresses, and telephone numbers of policyholders; the amounts and types of insurance purchased; due dates of premiums and the amounts thereof; the character, description, and location of insured property; and personal information as to the insured such as age, physical condition, the existence of dependents, licensed drivers in the household, driving records of licensed drivers, and financial and credit history. This customer data has been classified as confidential by California courts under common law principles, *see Dempster,* 344 P.2d at 826; *Gordon,* 321 P.2d at 459; *Buskuhl,* 76 Cal.Rptr. at 607–08, and under the UTSA, *see Courtesy Temporary Serv.,* 272 Cal.Rptr. at 357; *American Credit Indem.,* 262 Cal. Rptr. at 97, and has been recognized as an appropriate subject of limitation in an employment agreement despite statutory language identical to North Dakota Century Code section 9–08–06.

While a "restraint of trade need not be absolute to be unlawful," *Werlinger,* 496 N.W.2d at 29, the North Dakota Supreme Court has recognized that employers are entitled to impose some restrictions on their current employees' outside business activities. Agreements prohibiting an employee from soliciting the employer's clients for the employee's own business during the term of his employment are valid. *See Biever, Drees & Nordell v. Coutts,* 305 N.W.2d 33, 36 (N.D. 1981); *see also Werlinger,* 496 N.W.2d at 31 (Vande Walle, C.J., concurring specially); *Spectrum,* 479 N.W.2d at 853 (Vande Walle, J., concurring specially). The same equitable considerations addressed by the North Dakota Supreme Court in upholding solicitation limitations imposed on employees during the course of their employment are advanced by upholding reasonable limitations on a former agent's ability to try to switch his former employer's policyholders to the agent's new company.

For the reasons discussed above, we believe that the North Dakota Supreme Court would uphold the nonsolicitation clause contained in Kovarik's American Family Agent Agreement. This clause does not prohibit Kovarik from accepting employment as an insurance agent with another insurance company in direct competition with American Family. Nor does the clause broadly prevent Kovarik from soliciting American Family policyholders for his new company. The clause merely obligates Kovarik to refrain for one year from soliciting those current American Family policyholders who are credited to his account at the time he leaves American Family. We thus conclude that under North Dakota law the nonsolicitation clause is not unenforceable as a restraint of trade. Finally, for the reasons given earlier in this opinion, this clause and the forfeiture clause in combination are not invalid on restraint-of-trade grounds.

### III.

The judgment of the District Court holding that the nonsolicitation clause and the forfeiture clause are void and unenforceable under North Dakota law as a restraint of trade and awarding extended earnings to Kovarik is reversed. The case is remanded for (1) entry of summary judgment for American Family on Kovarik's restraint-of-trade claim, and (2) consideration of Kovarik's alternative claim, which the District Court has not yet addressed, that under North Dakota law the forfeiture clause in his employment agreement with American Family, which provides for total forfeiture of extended earnings for his violation of the nonsolicitation clause, operates as a penalty and therefore is void and unenforceable under North Dakota Century Code section 9–08–03. We express no opinion as to the merits of the penalty-clause claim.