2001 ND 156

**WARNER AND COMPANY, a North Dakota corporation, Plaintiff and Appellant,**

v.

**Shirley M. SOLBERG, Defendant and Appellee.**

No. 20000327.

Supreme Court of North Dakota.

Sept. 5, 2001.

Ronald H. McLean (argued) and Jane L. Dynes, Serkland Law Firm, Fargo, ND, for plaintiff and appellant.

Robert Vaaler (argued), and Rebecca Jo Heigaard McGurran (appeared), Grand Forks, ND, for defendant and appellee.

VANDE WALLE, Chief Justice.

[¶ 1]  Warner and Company ("Warner") appealed the summary judgment dismissing its breach of contract claim against Shirley Solberg.  The trial court held the contract was an unlawful restraint of trade in violation of N.D.C.C. § 9–08–06.  We hold a portion of the contract does violate N.D.C.C. § 9–08–06 and there are genuine issues of material fact precluding summary judgment with respect to the remaining portions of the contract.  We affirm the judgment in part, reverse the judgment in part, and remand for further proceedings.

## I

[¶ 2] Warner is an independent insurance agency with its principal office in Fargo, North Dakota. In 1980, Solberg was hired by Warner. Solberg worked for Warner as a personal lines underwriter, marketing manager, and an insurance agent. In 1982, Solberg was made a vice president of Warner and purchased 500 shares of Warner stock.

[¶ 3] In 1992, Solberg signed a producer agreement. Paragraph 5 of the agreement covers the protection of trade secrets. Paragraph 6 contains limitations after termination of employment on efforts to discontinue existing policies, writing replacement policies, and soliciting former employees. Paragraph 7 contains the agreement on liquidated damages, specifying loss of renewal commissions and payment of two times the current annual commission, for insurance business lost to the agency as a result of a breach.

[¶ 4] In 1996, Solberg began to seek other employment. Solberg contacted Vaaler Insurance, Inc. ("Vaaler") and in December 1996, Vaaler offered Solberg a position. On March 2, 1997, Solberg resigned her position at Warner. Solberg sold her stock in Warner. Solberg accepted a position with Vaaler effective April 1, 1997.

[¶ 5] Solberg retained files of Warner's after she resigned. One box of files containing information on policyholders was retrieved within weeks. Another box containing personnel files was retrieved months later.

[¶ 6] Within a few months of Solberg's resignation, Warner lost the business of Phoenix International, Inc., and the business of related companies of Ag Air Manufacturing, Agris Corporation, InterAg Tec and InterAg Food, to Vaaler Insurance. Solberg was the insurance producer for these policies at Warner and is the producer for these policies now at Vaaler. Warner stated the lost business is approximately $50,000 in commissions. Warner claimed Solberg has accepted and written policies for Vaaler representing approximately 85–90% of the commissions she was handling for Warner.

[¶ 7] Eight months after Solberg left Warner, Susan Hilkerbaumer, an employee of Warner, was hired by Vaaler and was assigned to work for Solberg. Hilkerbaumer was supervised by Solberg when Solberg worked for Warner.

[¶ 8] Warner brought a suit against Solberg alleging she had breached Paragraph 6 of the agreement by her actions to "affect the discontinuance" of the policies Phoenix International, Inc. and related companies had with Warner, and by writing those same policies for Vaaler. Additionally, Warner alleged Solberg breached her contract by soliciting Hilkerbaumer to leave her job at Warner for a new position at Vaaler. Also, by retaining files and using trade secrets, Warner contended Solberg breached Paragraph 5 of the agreement. Solberg denied any breach and argued the agreement was void as a restraint of trade in violation of N.D.C.C. § 9–08–06.

[¶ 9] Solberg moved for summary judgment. The district court granted the summary judgment on the basis there were no questions of material fact and Solberg was entitled to judgment as a matter of law because the agreement was void as a restraint of trade in violation of N.D.C.C. § 9–08–06.

## II

[¶ 10] Summary judgment is a procedural device for the prompt and expeditious disposition of a controversy without a trial. *Hall Family Living Trust v. Mutual Service Life Ins. Co.*, 2001 ND 46,

¶ 6, 623 N.W.2d 32. Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law." N.D.R.Civ.P. 56(c). The party opposing summary judgment cannot simply rely on factual assertions in a brief or pleadings and cannot rely on unsupported allegations; such conclusory assertions are insufficient to raise an issue of material fact. *Jones v. Barnett*, 2000 ND 207, ¶ 5, 619 N.W.2d 490. However, the evidence must be viewed in the light most favorable to the party opposing the motion, who must be given the benefit of all favorable inferences which can reasonably be drawn from the evidence. *Mandan Educ. Ass'n v. Mandan Public School Dist. No. 1,* 2000 ND 92, ¶ 6, 610 N.W.2d 64. Whether the trial judge properly granted summary judgment is a question of law and is reviewed de novo. *Garofalo v. St. Joseph's Hosp.,* 2000 ND 149, ¶ 6, 615 N.W.2d 160.

### III

[¶ 11] Warner argues the activity prohibited by the agreement between Solberg and Warner is not within the purview of N.D.C.C. § 9–08–06 and therefore the agreement is not void as a restraint of trade. Paragraph 6 of the agreement states:

6. During the Producer's employment and for a period of three (3) years following the date of termination of the Producer's employment with the Agency, the Producer will not engage directly or indirectly, personally or through any other person in any of the following prohibited activities:

a. The Producer will not solicit, contact or in any way attempt to affect the discontinuance of any of the Agency's insurance business.

b. The Producer will not on the Producer's own behalf or for any other agency, broker, salesman, or insurance company accept or write any policy of insurance in replacement of any policy issued by the Agency prior to the termination of this agreement, or otherwise be involved in or assist with the replacement of any such insurance business.

c. The Producer will not solicit or seek to influence any other employee of the Agency to become directly or indirectly the employee or representative of any other insurance agency or insurance company.

[¶ 12] Section 9–08–06, N.D.C.C., declares contracts that constitute a restraint of business are void, with two exceptions:

Every contract by which anyone is restrained from exercising a lawful profession, trade, or business of any kind is to that extent void, except:

1. One who sells the goodwill of a business may agree with the buyer to refrain from carrying on a similar business within a specified county, city, or a part of either, so long as the buyer or any person deriving title to the goodwill from him carries on a like business therein.

2. Partners, upon or in anticipation of a dissolution of the partnership, may agree that all or any number of them will not carry on a similar business within the same city where the partnership business has been transacted, or within a specified part thereof.

[¶ 13] Concluding neither of the exceptions applied, the trial court held the agreement was void because N.D.C.C. § 9–08–06 prohibits any restraint of trade. Citing this Court's decision in *Werlinger v.*

*Mutual Service Casualty Ins. Co.*, 496 N.W.2d 26, 29 (N.D.1993), the trial court highlighted that case's recognition of the long-standing public policy against restraints upon free trade.

■ [¶ 14] Although the statute may appear to protect the party against whom a contract not to compete is sought to be enforced, statutes making void contracts in restraint of trade are based upon consideration of public policy and not necessarily upon consideration for the party against whom relief is sought. *Herman v. Newman Signs, Inc.*, 417 N.W.2d 179, 181 (N.D.1987); *Hill Medical Corp. v. Wycoff*, 86 Cal.App.4th 895, 103 Cal.Rptr.2d 779, 784 (2001). It is the right of the public's access to the services offered by the employee that is more significant than the employee's interests. In *Werlinger*, 496 N.W.2d at 29–30, the Court recognized the statute invalidates provisions in employment contracts prohibiting an employee from working for a competitor after completion of his employment or imposing a penalty if he does so. In *Spectrum Emergency Care, Inc. v. St. Joseph's Hospital & Health Ctr.*, 479 N.W.2d 848, 852 (N.D. 1992), the Court held the statute prohibits an excessive restraint on a person's exercise of a lawful profession, trade, or business as an employer as well as an employee. *See Earthworks, Inc. v. Sehn*, 553 N.W.2d 490, 493 (N.D.1996).

■ [¶ 15] In *Werlinger*, 496 N.W.2d at 30, the Court held the agreement was void because it violated N.D.C.C. § 9–08–06; however, that agreement was different than the agreement between Solberg and Warner. In *Werlinger*, 496 N.W.2d at 27, the agreement prohibited the insurance agent to work or "in any way be connected" with property, casualty, health, or life insurance business within one year of termination within 25 miles of his former business. The activity prohibited in Paragraph 6(a) of the agreement Solberg signed is any "attempt to affect the discontinuance" of any of Warner's existing insurance business.

[¶ 16] In *Werlinger* we cited with approval decisions of the California courts because California statutes contain the same provision from the Field Code as N.D.C.C. § 9–08–06.[1] In *Buskuhl v. Family Life Ins. Co.*, 271 Cal.App.2d 514, 76 Cal.Rptr. 602 (1969), the court invalidated a provision in an employment contract prohibiting an employee from working for a competitor after completion of employment or imposing a penalty if the employee did so. But the court in *Buskuhl* upheld a provision in the contract restricting an employee from dealing with the customers of the former employer for a limited time as not being within the purview of the statute if confidentiality of the identity of customers was an element of the restrictions.

[¶ 17] Recognizing this Court has applied N.D.C.C. § 9–08–06 to invalidate clauses in employment agreements that absolutely bar an employee from competing with a former employer or working for a competitor, the United States Court of Appeals for the Eighth Circuit, applying

---

1. Section 9–08–06, N.D.C.C., is derived from the Field Code, the same source as Section 16600 of the California Business and Professional Code, and the language of the California statute is nearly identical to N.D.C.C. § 9–08–06. *See* Cal. Bus. and Prof.Code § 16600 (stating "every contract by which anyone is restrained from engaging in a lawful profession, trade, or business of any kind is to that extent void"). Because of the common derivation, we have stated California court decisions construing Field Code sections, while not binding, are entitled to respectful consideration, and may be persuasive and should not be ignored. *Werlinger v. Mutual Service Casualty Ins. Co.*, 496 N.W.2d 26, 30 (N.D. 1993).

North Dakota law, concluded less burdensome restrictions may survive. *Kovarik v. American Family Insurance Group,* 108 F.3d 962, 965 (8th Cir.1997). The agreement in *Kovarik* only obligated Kovarik not to solicit for one year current policy holders credited to his account. *Id.* Looking to former applications of N.D.C.C. § 9–08–06, as well as California applications of a similar statute, the United States Court of Appeals for the Eighth Circuit held the nonsolicitation clause was not invalid as an unlawful restraint of trade. *Id.* at 967. *See Buskuhl v. Family Life Ins. Co.,* 271 Cal.App.2d 514, 76 Cal.Rptr. 602, 607 (1969) (holding agreement to avoid injuring the former company in its relations with customers and to refrain from attempting to induce customers to discontinue association with former company for five years did not prevent the employee from conducting his business); *Gordon v. Landau,* 49 Cal.2d 690, 321 P.2d 456, 459 (1958) (holding agreement to not use confidential lists to solicit customers for one year was valid); *Hollingsworth Solderless Terminal Co. v. Turley,* 622 F.2d 1324, 1330 (9th Cir.1980) (concluding "a person is not always free to solicit customers of a former employer or to use information acquired during his former employment").

[¶ 18] We are urged to follow the California decisions as well as the decision in *Kovarik.* Because of the plain language of the statute, the history of legislation in North Dakota concerning this issue, and because North Dakota has enacted trade-secrets legislation, we decline to do so.

[¶ 19] Section 9–08–06, N.D.C.C., prohibits a contract by which anyone is restrained from exercising a lawful profession, trade or business with certain specific exceptions we discuss later in this opinion. The statute has been applied to employers and employees. *E.g., Spectrum Emergency Care.* The statute contains no exception for the contractual provisions in § 6(a) and (b) of the contract. It is black letter law in North Dakota that in construing and applying a statute the court looks first to the language of the statute. *E.g., In re Juran & Moody, Inc.,* 2000 ND 136, ¶ 6, 613 N.W.2d 503; N.D.C.C. §§ 1–02–02, 1–02–03. The words used in the statute must be given the meaning intended by the lawmakers. *City of Enderlin v. Pontiac Tp., Cass County,* 62 N.D. 105, 242 N.W. 117, 122 (1932). Only if the statute is ambiguous do we delve further for legislative intent or policy. *In re Juran & Moody, Inc.* We see no ambiguity in N.D.C.C. § 9–08–06.

[¶ 20] Furthermore, the North Dakota Legislature has been asked several times to enact legislation recognizing the validity of provisions restricting the ability of a former employer to solicit a former employee's clients. The most recent example was in the Fifty–Seventh Legislative Assembly when S.B. 2355 was introduced and would have amended N.D.C.C. § 9–08–06 to, among other matters, permit an employee to agree with an employer not to "[s]olicit any existing customer of the employer existing at the date of termination within a specified county or counties or such other specified area for a period of up to two years from the date of termination of the agreement if the employer continues to carry on a like business in that area." *See also* S.B. 2402, Fifty–Sixth Legislative Assembly (1998); H.B. 1389 Fifty–Fourth Legislative Assembly (1995). These bills failed to pass. Although the defeat of legislation is not indicative of legislative intent, for public policy is declared by the Legislature's action, not by its failure to act, *James v. Young,* 77 N.D. 451, 43 N.W.2d 692 (1950), neither are the courts to provide judicial exceptions in the face of the clear language of the statute. *Douville v. Pembina County Water Re-*

*source District,* 2000 ND 124, ¶ 9, 612 N.W.2d 270 (holding when a statute is clear and unambiguous court will not disregard the letter of the law because the legislative intent is clear from the face of the statute).

[¶ 21] Finally, insofar as the California decisions such as *Buskuhl* preceded the adoption of the Uniform Trade Secrets Act in California in 1985, *see* Cal. Civ.Code §§ 3426 through 3426.11 (West 1997), and as we discuss in Section V of this opinion, North Dakota has also now adopted the Uniform Trade Secrets Act, *see* N.D.C.C. ch. 47–25.1, the rationale in those cases for the need to create a judicial exception to N.D.C.C. § 9–08–06 to protect the employer's customer list may now be questioned.

[¶ 22] In *Werlinger,* 496 N.W.2d at 27, *Spectrum,* 479 N.W.2d at 850, and *Olson v. Swendiman,* 62 N.D. 649, 651, 244 N.W. 870 (1932), prohibitions were broad and general. Werlinger was prohibited from selling any insurance within 25 miles. *Werlinger,* 496 N.W.2d at 27. The doctors in *Spectrum* were prohibited from practicing medicine at the hospital. 479 N.W.2d at 850. In *Olson,* 62 N.D. at 651, 244 N.W. at 870, the contract provided, if the employed dentist left before the term expired, he could not practice dentistry in Grand Forks, North Dakota, or East Grand Forks, Minnesota, for a period of two years. In contrast, Paragraph 6(a) of the contract between Warner and Solberg limits agents from leaving one agency and converting the same policies of the same customers to a new agency. Nevertheless, Paragraph 6(a), although more narrowly drawn than those in *Werlinger, Spectrum* and *Olson,* nevertheless does not escape the broad prohibition in N.D.C.C. § 9–08–06, nor does the provision fall within the two exceptions allowed by that statute.

[¶ 23] In *Biever, Drees & Nordell v. Coutts,* 305 N.W.2d 33, 38 (N.D.

1981), we held an accounting firm had a right to expect an employee would not solicit clients of the firm for himself while he was employed by the firm and the employee had an obligation to the firm not to do so,· notwithstanding there was no written contractual provision to that effect. We did so, relying on the North Dakota Administrative Code § 3–04–05–01 (since repealed) prohibiting an accountant from seeking additional engagements from a client without first notifying the referring accountant. We held the provision of the Administrative Code "clearly sets forth what the firm had a right to expect from Coutts, i.e., that he would not solicit clients of the firm for himself while he was employed by the firm." *Id.* at 36. Although the Administrative Code provision has been repealed and would not, in any event, apply in this instance, the same concept is embodied in N.D.C.C. § 34–02–14 which provides in part that an employee "who has any business to transact on his own account similar to that entrusted to him by his employer shall give the latter the preference always." When statutes relate to the same subject matter, we make every attempt to harmonize and give meaningful effect to each statute without rendering one or another useless. *In Interest of K.G.,* 551 N.W.2d 554, 556 (N.D.1996). Thus, our decision in *Biever, Drees & Nordell v. Coutts* recognizes that soliciting the employer's clients for one's self without the employer's consent, is contrary to the purpose of N.D.C.C. § 34–02–14. Such activity, even in the absence of an agreement, constitutes a breach of loyalty entitling Warner to "equitable protection against unfair competition." *Spectrum,* 479 N.W.2d at 852. *See* N.D.C.C. §§ 34–02–07, 34–02–14. Solberg informed Phoenix International of her plans to leave Warner in advance of her resignation. The question of fact remains if that contact

included solicitation of clients prior to her leaving Warner. Our decisions in *Werlinger*, *Spectrum* and *Olson* recognize the meaning of N.D.C.C. § 9–08–06 and prohibit restraints on solicitation after the employment ceases.

[¶ 24] Paragraph 6(b) prohibits Solberg from accepting or writing any policy of insurance in replacement of any policy issued by Warner prior to the termination of the agreement. That clause of the agreement also generally prohibits Solberg from otherwise being involved in or assisting with any replacement policies. This clause inappropriately prohibits Solberg from writing a policy for a client who freely comes to her. This clause restrains third parties from contracting for insurance with the company or agent they choose. These limitations constitute a restraint of trade and therefore the agreement is "to that extent void." N.D.C.C. § 9–08–06. *See Hawkins Chemical, Inc. v. McNea*, 321 N.W.2d 918, 920 (N.D.1982) (stating "it is well settled that if an unreasonable restraining clause can be separated leaving a reasonable agreement, it is valid to do so").

[¶ 25] Paragraph 6(c) prohibits Solberg from soliciting or seeking to influence any employee of Warner to become the employee of Vaaler. This prohibition is narrowly drawn to penalize only Solberg's actions of soliciting or influencing an employee to leave Warner and come to work for Vaaler and is not void as a restraint of trade. Warner alleges Solberg solicited Hilkerbaumer to leave Warner and come to work for her at Vaaler. Solberg maintains Hilkerbaumer contacted her about a possible position at Vaaler and independently decided to come to work for Vaaler. The fact question remains if Solberg solicited Hilkerbaumer in violation of Paragraph 6(c) of the agreement.

## IV

[¶ 26] Warner argues Solberg's sale of stock and the compensation paid her constitute sales of goodwill and therefore the first exception to N.D.C.C. § 9–08–06 applies. The trial court concluded "[c]learly, neither of the listed exceptions applies to the present case." The goodwill exception to N.D.C.C. § 9–08–06 provides:

1. One who sells the goodwill of a business may agree with the buyer to refrain from carrying on a similar business within a specified county, city, or a part of either, so long as the buyer or any person deriving title to the goodwill from him carries on a like business therein.

[¶ 27] Section 47–07–10, N.D.C.C. defines goodwill as "[t]he goodwill of a business is the expectation of continued public patronage, but it does not include a right to use the name of any person from whom it was acquired." In *Bessel v. Bethke*, 56 N.D. 1, 6–7, 215 N.W. 868, 869–70 (1927), we concluded the predecessor to N.D.C.C. § 9–08–06(1) applied to a sale of stock.

> Where one sells his stock he necessarily disposes of his interest in the good will of the business conducted by the corporation to the same extent as he parts with his interest in any other property of the corporation. And where, as in the instant case, he disposes of all his stock and severs his connection with a business that had been in a measure dependent for its success upon his skill or ability and contracts at the same time not to re-engage in the same business within an area permitted by the statute, he has, in fact, sold the good will within the exception, and the contract is valid.

However, the goodwill exception makes a limited non-competition agreement valid only if it is connected with the sale of the

goodwill of a business. *Earthworks, Inc. v. Sehn,* 553 N.W.2d 490, 493 (N.D.1996). *See Hayashi v. Ihringer,* 79 N.D. 625, 632, 58 N.W.2d 788, 791–92 (1953).

[¶ 28] When a party sells a business and, as part of the sale, agrees not to engage in the same or similar business in the same area for a particular and reasonable length of time, "good will, although not specifically mentioned, [is] a subject of the sale and passe[s] as an incident of the transfer of real and personal property involved." *Igoe v. Atlas Ready–Mix, Inc.,* 134 N.W.2d 511, 514 (N.D.1965). *See also Lire, Inc. v. Bob's Pizza Inn Rest., Inc.,* 541 N.W.2d 432, 433 n. 1 (N.D.1995); *Engstrom v. Larson,* 77 N.D. 541, 562, 44 N.W.2d 97, 108 (1950). The sale of less than a majority interest is still a sale of goodwill and meets the exception of N.D.C.C. § 9–08–06(1). *Earthworks,* 553 N.W.2d at 493; *Bessel,* 56 N.D. at 6, 215 N.W. at 869.

[¶ 29] Solberg's sale of stock can constitute a sale of goodwill qualifying for the exception. Ordinarily, it is a question of fact whether the sale of stock was sufficiently connected to the agreement. Although the sale of stock can be less than a majority interest to qualify as a sale of goodwill sufficient for the exception, it is ordinarily a question of fact whether the sale of stock was sufficient to constitute a sale of goodwill. We believe the sale of only a small amount of stock may not be sufficient to qualify for the goodwill exception to N.D.C.C. § 9–08–06. *See Hill Medical Corp. v. Wycoff,* 86 Cal.App.4th 895, 103 Cal.Rptr.2d 779, 786 (2001)(holding the sale of the corporate fractional interest must involve "a substantial interest in the corporation, so that the owner, in transferring 'all' of his [or her] shares, can be said to transfer the goodwill of the corporation," quoting *Bosley Medical Group v. Abramson,* 161 Cal.App.3d 284,

207 Cal.Rptr. 477, 481 (1984)). Solberg sold 500 of the 100,000 shares of stock issued in Warner. We agree with the trial court that, as a matter of law, the sale of a 1/200th interest cannot be said to transfer the goodwill of the business.

V

[¶ 30] Warner contends Solberg misappropriated trade secrets to cause the transfer of Warner policies to Vaaler. Trade secrets are defined by N.D.C.C. § 47–25.1–01(4).

"Trade secret" means information, including a formula, pattern, compilation, program, device, method, technique, or process, that:

a. Derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use; and

b. Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

[¶ 31] Affidavits submitted by Warner support the claim it treated all client coverage information, expiration dates, premiums, commissions, and claim histories as trade secrets. Warner presented evidence it protected its confidential trade secrets through its producer agreements, job descriptions, employee manuals and memoranda. Paragraph 5 of the producer agreement signed by Solberg provides:

The Agency shall have the exclusive right, title and interest in and to all materials, services and information pertaining to such insurance business whether in the possession of the Producer or the Agency including but not by way of limitation all records of insurance policies, policy applications and under-

writing information, policy expiration dates, customer lists, prospective customer information, manuals, communications, sales and promotion materials and any other proprietary Agency information. Both parties agree that all such information, documents or materials constitute trade secrets within the meaning of the Uniform Trade Secrets Act as codified in NDCC, Chapter 47–25.1 and Minn.Stat. Chapter 325C.01. Producer shall not be authorized to use, copy or divulge any such trade secrets except on behalf of the Agency in accordance with the terms of this agreement. On termination of the Producer's employment, all such materials, services and information, and any copies, summaries or documents containing any such information, shall be immediately surrendered to the Agency whether provided by the Agency or prepared by the Producer and will not thereafter be used by the Producer or be divulged to any other person.

[¶ 32] In *Advanced Business Telephones, Inc. v. Professional Data Processing, Inc.*, 359 N.W.2d 365, 368 (N.D.1984), we held the trial court did not abuse its discretion by ordering that a preliminary injunction, prohibiting the use of a customer list, remain in effect pending the completion of the action on its merits. Advanced Business Telephones, Inc., sought damages and an injunction to prohibit continued use of its trade secrets, which they asserted Professional Data Processing misappropriated. *Id.* at 366. We stated "[t]he trade secret, if any, involved here is a list of business customers of ABT's Telnet division." *Id.*

[¶ 33] In *Northern States Power Co. v. North Dakota Public Service Com'n*, 502 N.W.2d 240, 243 (N.D.1993), we held the definition of trade secrets in N.D.C.C. § 47–25.1–01(4) was broad enough to include the price and volume data in Northern States Power Co.'s gas transportation contracts. We affirmed the Public Service Commission's determination that "the 'price and volume data contained in NSP's filings derives independent economic value from not being generally known to and not being readily ascertainable by proper means by providers of alternative fuel,' that this data 'is kept confidential by NSP,' and that, therefore, this data constitutes a trade secret under the Uniform Trade Secrets Act."[2] *Id.*

[¶ 34] The United States Court of Appeals for the Eighth Circuit in *Kovarik v. American Family Insurance Group*, 108 F.3d 962, 966 (8th Cir.1997), determined customer information has been classified as a trade secret and can be an appropriate subject of limitation in employment agreements:

> A finding of confidentiality may be appropriate under common law principles, as well as under the UTSA, even if the customers' names are known or easily ascertainable, if the specific attributes of such customers are important to the seller and are not obvious. This is the case with a former insurance agent who acquires the names, addresses, and telephone numbers of policyholders; the amounts and types of insurance purchased; due dates of premiums and the amounts thereof; the character, description, and location of insured property; and personal information as to the in-

---

**2.** Although we affirmed the price and volume information was a trade secret, we also held it was a public record and subject to our open-records law because the price and volume information was required by law to be kept, maintained, and publicly filed. *Northern States Power Co. v. North Dakota Public Service Com'n*, 502 N.W.2d 240, 243–44 (N.D. 1993).

sured such as age, physical condition, the existence of dependents, licensed drivers in the household, driving records of licensed drivers, and financial and credit history. This customer data has been classified as confidential by California courts under common law principles, and under the UTSA, and has been recognized as an appropriate subject of limitation in an employment agreement despite statutory language identical to North Dakota Century Code section 9–08–06. (Citations omitted).

[¶ 35] Courts in other jurisdictions have examined a number of factors to determine whether particular employer customer information constitutes a protectable trade secret. *See* Annot., *Former Employee's Duty, In Absence of Express Contract, Not to Solicit Former Employer's Customers or Otherwise Use His Knowledge of Customer Lists Acquired In Earlier Employment*, 28 A.L.R.3d 7 (1969); 54 Am.Jur.2d *Monopolies, Restraints of Trade, and Unfair Trade Practices* §§ 914, 927 and 1122 (1996). The United States Court of Appeals for the Ninth Circuit examining California law in *Hollingsworth*, 622 F.2d at 1332, stated: "Perhaps the most important consideration is whether the information is readily accessible to a reasonably diligent competitor or salesman."

[¶ 36] After resigning on March 2, 1997, Solberg retained a box of files in her home until they were retrieved weeks later by an employee of Warner. Months later, Warner discovered Solberg also had personnel files containing employee evaluations in her possession. The trial court made no specific findings concerning Warner's claim Solberg misappropriated trade secrets, stating broadly "there are no questions of material fact." Fact questions and questions of law remain concerning whether the files and information retained by Solberg were trade secrets and whether Solberg's actions constituted misappropriation of trade secrets.

## VI

[¶ 37] We affirm the summary judgment in part and reverse the summary judgment in part. We remand for trial in conformance to this opinion.

[¶ 38] CAROL RONNING KAPSNER, MARY MUEHLEN MARING, WILLIAM A. NEUMANN and LESTER KETTERLING, D.J., concur.

[¶ 39] LESTER KETTERLING, D.J., sitting in place of SANDSTROM, J., disqualified.