**IT IS HEREBY ORDERED** that Plaintiff Monsanto's Motion for Summary Judgment of Inequitable Conduct [doc. # 143] is **GRANTED**.

**IT IS FURTHER ORDERED** that all other pending motions in this case are **DENIED AS MOOT.**

**PRUCO SECURITIES CORPORATION and Prudential Insurance Company of America, Plaintiffs,**

v.

**Robert MONTGOMERY, Defendant,**

and

**Minnesota Life Insurance Company and Securian Financial Services, Inc., Defendant–Intervenors.**

No. A1–03–055.

United States District Court, D. North Dakota, Southwestern Division.

May 22, 2003.

---

37. *See* Exhibit 33 for a diagram of the patent lineage. Bayer does not dispute the notion that all the patents-in-suit have the same disclosure and are all linked together. Nor do they dispute that if the '799 claims would be unenforceable due to inequitable conduct, every other claim in this case would be unenforceable as well.

Patrick W. Durick, Pearce & Durick, Bismarck, ND, Anthony Paduano, Leonard Weintraub, New York, NY, for plaintiffs.

Orell D. Schmitz, Schmitz Moench and Schmidt, Bismarck, ND, for defendant.

Patrick J. Ward, Lawrence E. King, Zuger Kirmis & Smith, Bismarck, ND, Sheila J. Carpenter, Jorden Burt LLP, Washington, DC, for intervenors-defendants.

## MEMORANDUM OPINION AND ORDER DENYING APPLICATION FOR PRELIMINARY INJUNCTION AND DISSOLVING THE TRO

HOVLAND, Chief Judge.

This application for injunctive relief arises out of Defendant Robert Montgomery's ("Montgomery") alleged breach of a contract with the Plaintiffs, Pruco Securities Corporation and Prudential Insurance Company of America (hereinafter referred to as "Prudential"). According to Prudential, Montgomery breached certain restrictive covenants by improperly soliciting Prudential agents on behalf of his new employers, Minnesota Life Insurance Company and Securian Financial Services, Inc. (hereinafter referred to as "Minnesota Life"). Montgomery was one of Prudential's senior managers in Prudential's Bismarck, North Dakota office. Montgomery resigned from Prudential on April 18, 2003, and became affiliated with Minnesota Life, a direct competitor of Prudential. It is alleged that after Montgomery's departure from Prudential, he has improperly solicited Prudential personnel and gained access to certain confidential customer information.

On May 9, 2003, Prudential filed a Motion for a Temporary Restraining Order and for Preliminary Injunction pursuant to Rule 65(b) of the Federal Rules of Civil Procedure seeking to prevent Montgomery and those acting in concert with him from soliciting Prudential employees. On May 13, 2003, the Court issued a Temporary Restraining Order. On May 22, 2003, the Court granted Minnesota Life's Motion to Intervene. On May 23, 2003, Minnesota Life filed a Motion to Dissolve the Temporary Restraining Order previously granted to Prudential by the Court.

## I. BACKGROUND OF THE CASE

The defendant, Robert Montgomery, worked for Prudential from February 1987 until his resignation on April 18, 2003. Montgomery was the Manager of Financial Services in Prudential's Frontier Agency in Bismarck from October 2000 through April 2003. In that capacity he was responsible for recruiting, hiring, training, developing, and supervising the Prudential agents.

On October 23, 2000, Montgomery entered into a "Field Manager Agreement" with Prudential. Section 7 of the Agreement prohibits Montgomery from soliciting Prudential personnel for two years after the termination of his employment with Prudential:

> You also agree, during your association with the Company, in any capacity, and for a period of two years after the termination of your association with the Company, that you will not induce or attempt to induce any person associated with, or under contract with, the Company to terminate, and that you will not otherwise facilitate the termination by any such person of, his/her relationship with the Company. You also agree, during

the same time period that you will not induce or attempt to induce any such person to sell or solicit products/services on behalf of any other company which are in any way similar to those sold by the Company, and that you will not otherwise facilitate such conduct.

Newman Aff. ¶ 5 and Exhibit A.

On April 10, 2003, approximately one week before Montgomery's resignation, Minnesota Life held a meeting in Bismarck, North Dakota concerning an expansion of their business operations into North Dakota. All of Prudential's 17 agents in North Dakota were invited to the meeting. Several of Prudential's agents in North Dakota attended the meeting. Newman Aff. ¶¶ 13, 14.

On April 14, 2003, Montgomery entered into a "Statutory Agent Agreement" which includes a restrictive covenant virtually identical to Section 7 of the Manager Agreement. Newman Aff. ¶ 6 and Exhibit B. Each of these agreements contained virtually identical covenants which prohibited Montgomery from "inducing, attempting to induce, or facilitating the termination of the relationship between Prudential and any of its associates."

On April 18, 2003, four days after entering into the "Statutory Agent Agreement", Montgomery resigned from Prudential and entered into an employment arrangement with Minnesota Life.

It is alleged that notwithstanding the restrictive covenants agreed to by Montgomery, he solicited Prudential's personnel to join him at Minnesota Life. *See* Newman Aff. ¶¶ 15, 16. Since Montgomery's resignation, three Prudential agents or employees have resigned from Prudential to commence employment at Minnesota Life. *See* Newman Aff. ¶¶ 18–19. Prudential argues that it only seeks to maintain the *status quo* until such time as an arbitration panel convened by NASD Dispute

Resolution, Inc. can issue a decision on the merits.

As previously noted, Montgomery resigned from Prudential on April 18, 2003, and went to work for Minnesota Life. Three of Prudential's employees followed suit. Prudential agents Kasey Gilliss and Brian Neuhardt resigned on April 30 and May 5, 2003. Diane Enger, a marketing assistant with a leading agent in the Bismarck area, resigned on May 6, 2003. All three have subsequently obtained employment with Minnesota Life. The evidence presented to the Court revealed that both Gilliss and Neuhardt made their own decisions to join Minnesota Life and that they were not solicited by Montgomery. *See* Deposition of Gilliss, pp. 45–46, 78–79, and Deposition of Neuhardt, pp. 33–36, 59–63. Montgomery's deposition reveals that he has not solicited or encouraged any Prudential agent to join him. Deposition of Montgomery, pp. 105–108, 154–156, 164, 178–179. Diane Engen was not deposed nor was any evidence presented as to the reason(s) for her departure from Prudential.

Prudential initiated this action against Montgomery on May 9, 2003, asserting claims of breach of contract, misappropriation of trade secrets, breach of fiduciary duty, breach of duty of loyalty, conversion, and unfair competition. Prudential contends that Montgomery and Minnesota Life sought to gain access to Prudential's proprietary client list by recruiting experienced Prudential agents. Prudential has attributed the defection of Gillis, Neuhardt, and Enger to Montgomery's alleged solicitation and recruitment efforts. Prudential has also asserted that Montgomery helped Minnesota Life organize the meeting in Bismarck on April 10, 2003, before resigning from Prudential. However, there was no evidence presented to confirm such suspicions.

Prudential has requested that the Court issue a temporary restraining order and a preliminary injunction to maintain the status quo pending resolution of this matter by arbitration through NASD Dispute Resolution, Inc. The parties have indicated that this dispute is subject to binding arbitration and they expect that an arbitration hearing will be held shortly during which the arbitration panel will resolve all issues of liability and damages. On May 12, 2003, the Court granted Prudential's request for a Temporary Restraining Order, and ordered Montgomery to show cause why an injunction should not be entered against him or those acting in concert with him. On May 22, 2003, the Court granted Minnesota Life's Motion to Intervene. On May 27, 2003, the Court conducted a hearing on Prudential's application for a preliminary injunction.

## II. *LEGAL DISCUSSION*

■ In determining whether preliminary injunctive relief should issue in a federal setting, the Court is required to consider the factors set forth in *Dataphase Systems, Inc. v. C L Sys. Inc.,* 640 F.2d 109, 114 (8th Cir.1981) (*en banc*). The Eighth Circuit summarized those factors as follows:

> When considering a motion for a preliminary injunction, a district court weighs the movant's probability of success on the merits, the threat of irreparable harm to the movant absent the injunction, the balance between this harm and the injury that the injunction's issuance would inflict on other interested parties, and the public interest. *Dataphase Systems, Inc. v. C L Sys., Inc.,* 640 F.2d 109, 114 (8th Cir.1981) (*en banc*). We reverse the issuance of a preliminary injunction only if the issuance "is the product of an abuse of discretion or misplaced reliance on an erroneous legal premise." *City of Timber Lake v. Cheyenne River Sioux Tribe,* 10 F.3d 554,

556 (8th Cir.1993) *cert. denied* 512 U.S. 1236, 114 S.Ct. 2741, 129 L.Ed.2d 861 (1994).

*Pottgen v. Missouri State High School Activities Ass'n,* 40 F.3d 926, 929 (8th Cir.1994).

■ The burden of establishing the necessity of a preliminary injunction is on the movant. *Baker Elec. Co-op., Inc. v. Chaske,* 28 F.3d 1466, 1472 (8th Cir.1994); *Modern Computer Systems, Inc. v. Modern Banking Systems, Inc.,* 871 F.2d 734, 737 (8th Cir.1989) (*en banc*). "No single factor in itself is dispositive; in each case all of the factors must be considered to determine whether on balance they weigh towards granting the injunction." *Baker Electric Co-op.,* 28 F.3d 1466, 1472 (quoting *Calvin Klein Cosmetics Corp. v. Lenox Laboratories, Inc.,* 815 F.2d 500, 503 (8th Cir.1987)). The granting of a preliminary injunction is an extraordinary remedy and the right to such relief must be clearly established by the movant. *Brookins v. Wissota Promoters Ass'n, Inc.,* 142 F.Supp.2d 1149, 1151 (D.N.D.2000).

### A. *THREAT OF IRREPARABLE HARM*

■ Whether a preliminary injunction should issue involves a consideration and analysis of the *Dataphase* standards. In essence, the Court is required to balance the equities, give careful consideration to the four enumerated factors, and make the required analysis under *Dataphase.* In balancing the equities, no single factor is determinative but the absence of a finding of irreparable injury is sufficient grounds for denying the preliminary injunction. *Dataphase Systems, Inc. v. C L Systems, Inc.,* 640 F.2d 109, 114, n. 9. *See Gelco Corp. v. Coniston Partners,* 811 F.2d 414, 418 (8th Cir.1987) ("The failure to show irreparable harm is, by itself, a sufficient

ground upon which to deny a preliminary injunction.").

■ The evidence presented fails to show that Prudential is in substantial danger of losing sales or clients, *or* that it will suffer irreparable harm if a preliminary injunction is not granted at this stage of the litigation. Further, if Prudential can establish harm or monetary losses, it can be compensated by an award of damages before the arbitration panel.

Prudential has failed to produce any evidence that Montgomery, or any of the new agents at Minnesota Life, have replaced any Prudential policies. In over a month as a general agent for Minnesota Life, Montgomery moved one client's IRA account only because the client insisted on it. *See* Deposition of Montgomery pp. 177–178. None of the new agents have solicited clients of Prudential or replaced any Prudential policies.[1] Prudential has simply failed to establish the threat of irreparable injury or harm. The arbitration panel will be required to evaluate and assess the merits of the dispute and the Court was informed that panel would be conducting a hearing and issuing a decision with the next 30–60 days. The Court concludes that this *Dataphase* factor, i.e., the threat of irreparable harm, does not weigh in favor of Prudential. As such, the issuance of preliminary injunctive relief is not warranted.

## B. *LIKLIHOOD OF SUCCESS ON THE MERITS.*

The Eighth Circuit has held that of the four factors to be considered by the district court in considering preliminary injunctive relief, the likelihood of success on the merits is "most significant." *S & M Constructors, Inc. v. Foley Co.*, 959 F.2d 97, 98 (8th Cir.1992). For the reasons outlined below, the Court concludes that this factor weighs more in favor of Montgomery and against the issuance of a preliminary injunction.

### 1) *THERE IS NO CLEAR EVIDENCE OF SOLICITATION.*

From a review of the evidence presented to date, the Court concludes that Prudential has failed to present any clear evidence that Montgomery improperly solicited Prudential agents to follow him to Minnesota Life. There were three (3) depositions taken; namely, the depositions of Montgomery and former Prudential agents Brian Neuhardt and Kasey Gillis. The depositions were taken on May 21–22, 2003. The Court has carefully reviewed all of the depositions as well as the deposition exhibits. There is little, if any, evidence of any wrongdoing disclosed in the depositions and no competent evidence of any solicitation of clients or Prudential employees/agents. Each of these former Prudential agents testified that they made their own decision to leave Prudential for a better opportunity. Gilliss' primary reason for leaving Prudential was a conflict with a co-worker and the opportunity to earn more money. *See* Deposition of Gilliss, pp. 16–20, 42–43.

Prudential has not met its burden of proof and has failed to present any compelling evidence that Montgomery urged any of his clients to discontinue any of Prudential's insurance business *or* replace any Prudential policy issued prior to his resignation by utilizing any alleged confidential information. To the contrary, the

---

**1.** In *Warner and Co. v. Solberg*, 634 N.W.2d 65, 72 (N.D.2001), the North Dakota Supreme Court held that a noncompetition agreement which prohibited an insurance agent from post-employment solicitations of former clients/insureds was an illegal restraint on trade and void under North Dakota law. However, a provision which prohibited the agent from soliciting or seeking to influence former employees to leave the agency and join the agent at his new place of employment was not void and was enforceable.

greater weight of the evidence shows that Montgomery has neither solicited nor encouraged any clients or solicited any Prudential agent to join him. Both Gilliss and Neuhardt are close, personal friends of Montgomery but there is no direct evidence of any solicitation or facilitation. Prudential's allegations that Montgomery has utilized confidential information or that he has solicited Prudential employees has not been established in the record. Neither Montgomery, nor agents Neuhardt or Gilliss had any confidential information of significance. No evidence was presented that any of these insurance agents ever used confidential information wrongly taken from Prudential. There is no factual basis for the assertion that Montgomery and Minnesota Life have used or intend to use Prudential's proprietary information. Simply stated, the record at this stage is devoid of any competent evidence that Montgomery improperly solicited Prudential agents to follow him to Minnesota Life.

### 2) THE RESTRICTIVE COVENANTS.

The agreements between Montgomery and Prudential contain a provision that the contract shall be governed by the laws of New Jersey. Prudential asserts that New Jersey law should apply because the agreements so provide. Montgomery contends that North Dakota law should govern. Despite the choice of law provisions in the contractual agreements, the Court concludes that North Dakota law should apply based on public policy considerations and North Dakota's choice of law principles. The Court further concludes that the portions of the restrictive covenants are likely void under North Dakota law.

The courts of North Dakota apply the significant contacts test in resolving choice of law issues in breach of contract cases. *Daley v. American States Pre-*

*ferred Ins. Co.*, 587 N.W.2d 159, 162 (N.D. 1998). Under the significant contacts analysis, the court first determines "significant contacts" by examining all of the relevant contacts that may logically influence the decision of which law to apply. The specific contacts include the place of negotiation, formation or performance of the contract, the place where the object of the contract is located, and the parties' domicile, nationality, residence, place of business or incorporation. *See* Restatement (Second) of Conflicts of Laws § 188(2)(a)-(e) (1971).

An application of the Restatement standards in this case weighs in favor of applying North Dakota law. The contracts or agreements which contain the restrictive covenants were negotiated, formed, and performed in North Dakota. The object of the contract is located in North Dakota, and it purports to restrict conduct to be performed in North Dakota. While Prudential has its principal place of business in New Jersey, Montgomery is a resident of North Dakota and is employed in North Dakota. North Dakota also has an interest in and regulates the business of insurance within its borders. These facts all favor a determination of the issues under North Dakota substantive law rather than New Jersey law.

As previously noted, the restrictive covenants that Montgomery entered into with Prudential contain a choice of law provision which provides that the "Agreement shall be construed as having been made and entered into under the laws of the State of New Jersey." However, such a stipulation in a contract containing a covenant not to compete has been held ineffective where the covenant was determined to be contrary to public policy of the place of performance. *Forney Industries, Inc. v. Andre*, 246 F.Supp. 333, 334 (D.N.D.1965).

Section 9-08-06 of the North Dakota Century Code specifically voids restraints

of business unless the restraint falls within one of two specified categories. The statute provides as follows:

*9–08–06: In restraint of business void— Exceptions.* **Every contract by which anyone is restrained from exercising a lawful profession, trade, or business of any kind is to that extent void, except:**

1. One who sells the good will of a business may agree with the buyer to refrain from carrying on a similar business within a specified county, city, or a part of either, so long as the buyer or any person deriving title to the good will from him carries on like a business therein.

2. Partners, upon or in anticipation of a dissolution of the partnership, may agree that all or any number of them will not carry on a similar business within the same city where the partnership business has been transacted, or within a specified part thereof.

There are only two exceptions listed and this case falls within neither. Rob Montgomery neither sold goodwill to Prudential, nor was he a partner with Prudential.

The purpose of Section 9–08–06 is to promote commercial activity by restricting the ability of individuals to form agreements not to compete. *Herman v. Newman Signs, Inc.*, 417 N.W.2d 179, 181 (N.D.1987). "The statute represents one of the oldest and most continuous applications of public policy in contract law, and it invalidates provisions in employment contracts prohibiting an employee from working for a competitor after completion of his employment or imposing a penalty if he does so." *Earthworks, Inc. v. Sehn*, 553 N.W.2d 490, 493 (N.D.1996) (*citing Werlinger v. Mutual Service Cas. Ins. Co.*, 496 N.W.2d 26, 29–30 (N.D.1993)). For over seventy years, the North Dakota Supreme Court has consistently held that employment contracts cannot lawfully contain a restraint of trade. *See Olson v. Swendiman*, 62 N.D. 649, 244 N.W. 870 (1932) (a contract by an assistant, servant, or agent not to compete with his master or employer after the expiration of his time of serviced is not included in either exception to the statute and is, therefore, void).

■ However, the North Dakota Supreme Court in *Warner and Co. v. Solberg*, 634 N.W.2d 65, 73 (N.D.2001), held that a provision which prohibits a former insurance agent from soliciting or influencing an employee to leave and come to work for him at a new insurance agency was not void as a restraint of trade. But, a provision which prohibited the post-employment solicitation of clients was void under North Dakota law. 634 N.W.2d 65, 72–73. There remains a fact question as to whether Montgomery solicited anyone in this case but, based on the evidence presented to date, it appears he did not. The Court concludes that the restrictive covenants are overbroad and portions of the restrictive covenants are void under North Dakota law.[2]

---

**2.** Even if a non-competition agreement falls within one of the statutory exceptions, it will only be upheld by North Dakota courts so long as it is not overly broad, especially with respect to its geographic scope. Non-competition agreements must be limited to the *county* in which the two parties would compete. *See Earthworks, Inc. v. Sehn*, 553 N.W.2d 490, 493 (N.D.1996), *Lire, Inc. v. Bob's Pizza Inn Restaurants, Inc.*, 541 N.W.2d 432, 433 n. 1 (N.D.1995); *Herman v. Newman Signs, Inc.*, 417 N.W.2d 179, 181 (N.D.1987); *Hawkins Chemical, Inc. v. McNea*, 321 N.W.2d 918, 920 (N.D.1982); *Igoe v. Atlas Ready–Mix, Inc.*, 134 N.W.2d 511, 514 (N.D.1965). Here, the restrictive covenant purports to apply nationwide. In addition, the North Dakota Supreme Court in *Warner and Co. v. Solberg* expressly recognized that restraints on solicitation of clients after the employment ceases are prohibited.

Finally, even if New Jersey law applies, Prudential would arguably not be entitled to preliminary injunctive relief. New Jersey courts will only enforce a covenant by an employee not to compete that is reasonable in scope. *See Meadox Medicals, Inc. v. Life Systems, Inc.,* 3 F.Supp.2d 549, 552 (D.N.J.1998). There are serious questions as to the reasonableness of the two agreements in this litigation for the reasons outlined above. The Court concludes that regardless of which law applies, North Dakota or New Jersey, it is clear that all of the provisions of the various restrictive covenants would not be enforceable. In summary, this factor, i.e., the likelihood of success on the merits, does not weigh in favor of Prudential at this stage and warrants against the issuance of injunctive relief.

### C. *BALANCING THE HARM AND THE PUBLIC INTEREST.*

In order for a preliminary injunction to issue, the benefit of injunctive relief to Prudential must outweigh any detriment to Montgomery and it must also serve the public interest. The Court has carefully considered the remaining *Dataphase* factors and concludes that neither factor weighs in favor of Prudential. Instead, the equities weigh in favor of not granting a preliminary injunction.

### D. *THE COURT ARGUABLY HAS NO AUTHORITY TO ISSUE INJUNCTIVE RELIEF.*

█ Finally, in reviewing the motions, memorandums of law, and other pleadings submitted by the parties, the Court came across another troublesome issue that was not addressed by the parties. The issue of whether the Court has the authority to issue any injunctive relief in an action involving an arbitrable dispute is one that is unclear at best. The great weight of authority in the federal circuit courts is that a district court has the authority to grant injunctive relief in an arbitrable dispute. *See* Memorandum of Law in Support of Plaintiff's Motion for Temporary Restraining Order and Preliminary Injunction, p. 5. However, of significant importance is the fact that the Eighth Circuit Court of Appeals has held that a district court abuses its discretion in granting injunctive relief in an arbitrable action. In *Merrill Lynch, Pierce, Fenner & Smith, Inc., v. Hovey,* 726 F.2d 1286, 1291–1292 (8th Cir.1984), the Eighth Circuit found that a district court's grant of any injunctive relief in an arbitrable dispute constituted an abuse of discretion. The Eighth Circuit has subsequently held that injunctive relief can be granted if the contract contains "qualifying contractual language" that permits such relief and only if it can be granted without addressing the merits. *See Peabody Coalsales Co. v. Tampa Elec. Co.,* 36 F.3d 46 (8th Cir.1994). However, unlike the contract at issue in *Peabody,* the two Prudential agreements with Montgomery do not specify that the parties' obligations shall be continued in full during the dispute resolution process. Other courts, when faced with the same factual scenario as exists here, have held that injunctive relief would be inappropriate. *See Manion v. Nagin,* 255 F.3d 535 (8th Cir.2001).

The Court was informed at the oral arguments on May 27, 2003, that the core dispute between Prudential and Montgomery is arbitrable and will be subjected to binding arbitration within the very near future. As a result, the merits of the case are properly left to the arbitrators. The arbitration panel, in accordance with its determination on the merits, may modify any relief previously granted by this Court. Injunctive relief would be inappropriate under the circumstances based on the current state of the law in the Eighth Circuit. The law in the Eighth Circuit is apparently a minority view, but it is the law of this circuit.

## IV. CONCLUSION

The Court concludes that it is not appropriate to order injunctive relief at this stage of the litigation. The Court has carefully considered and applied the *Dataphase* criteria and concludes that a preliminary injunction would be inappropriate under the circumstances. In addition, the Eighth Circuit Court of Appeals has expressly held that it constitutes an abuse of discretion on the part of a district court to grant injunctive relief when the matter is pending before an arbitration panel. Although the great weight of federal circuit court authority favors consideration of injunctive relief, the law in the Eighth Circuit Court of Appeals does not. It is inappropriate for a district court to grant a preliminary injunction to preserve the status quo pending arbitration of the parties' dispute.

An arbitration panel has been selected and will likely schedule a hearing and complete its work within 30–60 days. The arbitration panel will address the merits and resolve all issues concerning liability and damages. As such, it is inappropriate for this Court to order injunctive relief under the current state of the law in the Eighth Circuit. More important, the Court has also considered each of the *Dataphase* factors and concludes that the right to injunctive relief has not been clearly established in the record; that the movant (Prudential) has not sustained its burden of proof; and that the granting of a preliminary injunction would be inappropriate.

**IT IS ORDERED** that the Plaintiff's Motion for Preliminary Injunction is **DENIED**. The Motion of Defendant–Intervenor to Dissolve the Temporary Restraining Order is **GRANTED**.